

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRUNO'S SUPERMARKETS, INC., d/b/a FOOD WORLD, | ) ) ) |
| Plaintiff/ Counter-Defendant, | ) ) ) |
| v. | ) Case No. CV-02-TMP-478-S |
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1657, AFL-CIO, | ) ) ) ) ) |
| Defendant/ Counter-Plaintiff. | ) ) ) |

**ENTERED**
JUN 2 0 2003

## MEMORANDUM OPINION

This cause is before the court on the cross-motions for summary judgment filed by the plaintiff/counter-defendant, Bruno's Supermarkets, Inc., ("Bruno's"), and by the United Food and Commercial Workers Union, Local 1657 ("the Union"). Both motions seek summary adjudication of the sole issue in this case, which is whether an arbitrator's award is due to be enforced. The Union also seeks fees and expenses incurred in this case.

This matter has been fully briefed, and Bruno's' motion is supported by an evidentiary submission. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.



## I. FACTS

Plaintiff Bruno's brought this action pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), seeking an order to vacate a labor arbitration decision. The lawsuit arises from an arbitration hearing held before Roberta J. Bahakel on October 29 - 30, 2001. In accordance with the collective bargaining agreement ("the CBA") governing the relationship between the parties, the Union's dispute over Bruno's' decision to reduce the number of full-time employees in some of its stores was brought to arbitration.

The dispute arose after Bruno's initiated a cost-cutting plan. Part of the plan involved adjusting staffing in certain stores to better meet "peak customer demand." Bruno's determined that it needed to re-schedule employees in order to increase staffing in the stores during the hours of peak demand and decrease staffing during the times that fewer customers shopped. To achieve that objective, Bruno's determined that it would be required to employ more part-time employees and fewer full-time employees. In April 2001, Bruno's informed the Union of its plan to make staffing changes. Each employee affected by the new plan was given three

options: (1) to transfer to another store; (2) to take part-time status; or (3) to be laid off.[1]

The Union filed grievances related to the staffing changes, which ultimately were taken to the arbitration hearing, as the CBA requires. On January 12, 2002, Arbitrator Bahakel issued a decision sustaining the grievances. Specifically, the arbitrator found that Bruno's "did violate one or more of the collective bargaining agreements in the overall reduction and layoff that occurred in the spring of 2001 in that it did not have a legitimate reason to relieve the employees from duty and that there cannot be a proper layoff where ample work is available." The arbitrator further found that Bruno's' "right to schedule its employees does not extend to reducing their status from full time to part time without negotiating with the Union in the absence of a legitimate need for a layoff." (Abitration decision, Ex. 1 to Bruno's' brief, at pp. 10-11).

Bruno's' position is that the arbitration decision should be vacated because it: (1) conflicts with the terms of the CBA; (2) imposes requirements upon Bruno's that are not provided by the CBA; and (3) is based simply on the arbitrator's own notions of

---

[1] The parties do not dispute that the options offered were the options provided for in the CBA. The issue presented to the arbitrator was simply whether Bruno's had the authority under the CBA to reduce the number of full-time employees in its stores as it did in this instance.

3

industrial justice. Bruno's asserts that it has the power to make the staffing decisions at issue pursuant to Article 5 of the CBA, which provides:

> The management of the business and the direction of the working forces, including the right to plan, direct, and control store operations, hire, suspend, or discharge for proper cause, transfer or relieve employees from duty because of lack of work, or for other legitimate reasons, the right to study or introduce new or improved production methods or facilities, and the right to establish and maintain reasonable rules and regulations governing the operation of the stores are vested in the Employer, provided, however, that this right shall be exercised with due regard for the rights of the employees and provided further that it will not be used for the purpose of discrimination against any employee.

Bruno's asserts that the language of Article 5 gave Bruno's the authority to make the staffing changes complained of by the Union and that, therefore, the arbitrator's decision failed to "draw its essence" from the contract. The Union asserts that the arbitrator's decision merely interprets the language of Article 5, which the Union argues permits the staffing changes only when Bruno's makes the changes based upon a "lack of work, or [] other legitimate reasons."

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ.

5

P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52; <u>see also</u> <u>Bill</u>

Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**III. DISCUSSION**

Federal judicial review of an arbitration decision is "extremely narrow," and arbitration awards are given a "strong presumption" of finality. Sullivan, Long & Hagerty, Inc., v. Local 559, 980 F.2d 1424 (11th Cir. 1993). The limited review of arbitration awards is in keeping with the strong public policy favoring arbitration as a means of dispute resolution. See, e.g., ButterKrust Bakeries v. Bakery, Confectionery and Tobacco Workers Int'l Union, 726 F.2d 698 (11th Cir. 1983).

The standard for review of an arbitrator's award was developed by the Supreme Court in 1960 as a product of the "Steelworkers Trilogy" of cases. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424. The Court held that where the parties provide for arbitration, the interpretation of a collective bargaining agreement is a question for the arbitrator, and "courts have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written contract which will support the claim." American Mfg., 363 U.S. at 568. So long as the arbitrator's decision concerns

construction of the contract, the court may not override that decision merely because the court would interpret the contract differently. Enterprise Wheel and Car, 363 U.S. at 599. The federal policy of settling labor disputes through arbitration would be undermined if courts were allowed to review the merits of arbitration awards. Id. at 596.

Courts must assume that the parties to a collective bargaining agreement prefer the judgment of an arbitrator over that of a court; courts should therefore refrain from interpreting provisions of the contract. American Mfg., 363 U.S. at 570. Even an ambiguous arbitrator's ruling must be undisturbed if one meaning results in a finding that the arbitrator was construing the language of the contract. Enterprise, 363 U.S. at 599. In applying the rules announced in the "Steelworkers Trilogy," the Eleventh Circuit Court of Appeals has stated that the substantive review of an arbitration award is "limited to a determination of whether the award is irrational, whether it fails to draw its essence from the collective bargaining agreement, or whether it exceeds the scope of the arbitrator's authority." Bruno's, Inc. v. United Food and Commerical Workers Int'l Union, 858 F.2d 1529, 1531 (11th Cir. 1988), quoting Butterkrust, 726 F.2d at 699. An arbitrator has the power to decide facts and to interpret the contract governing those facts; even where an arbitrator misreads

9

a contract, the court should not reject the arbitrator's award. United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987). This strict rule is appropriate in light of the fact that it is the arbitrator's interpretation of the contract that the parties have agreed to accept. Id. The arbitrator's interpretation must "draw its essence from the contract," and must not "reflect the arbitrator's own notions of industrial justice." Id. at 38. Even so, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the court must not overrule the decision, even if the court is convinced that the decision is in error. Id.

In this case, Bruno's argues that Arbitrator Bahakel's decision did not draw its essence from the contract and was an example of Bahakel's own notions of industrial justice. The facts upon which Bruno's relies in reaching these conclusions are simply these: (1) that Bahakel's statement that Bruno's did not have a legitimate reason for the staffing changes "changed" the rights given Bruno's in Article 5 of the CBA; and (2) that Bahakel's statement that Bruno's did not have the right to take the opposed action "without negotiating with the Union" imposed upon Bruno's an obligation not contained within the CBA. Having reviewed the arbitrator's decision, however, the court finds that Bruno's

position is without merit. The argument relating to Article 5 is, at its core, merely an assertion that the arbitrator "misread" or erroneously construed the contract language. Clearly, the arbitrator interpreted the language of Article 5 and determined that it placed upon Bruno's a duty to make the sort of staffing changes at issue only where there was a "lack of work" or other "legitimate reasons." Next, the arbitrator made a factual finding that Bruno's' staffing changes were not made as a result of a "lack of work" or any other "legitimate reason." This court has no authority to overrule the arbitrator's construction of the contract or her findings of fact.

Bruno's' argument relating to the negotiations with the Union also is unpersuasive. Although the court agrees that the arbitrator's statement *might* indicate that the arbitrator was "adding" a provision to the contract, the court is convinced that the arbitrator's reference is, at most, ambiguous. A fair reading of the statement is that, because the contract as written requires Bruno's to make the staffing changes at issue only where there exists a "lack of work" or "legitimate reasons," Bruno's' desire to have more power to make those changes could be gained by re-negotiating the issue with the union and modifying the requirements of Article 5. In other words, the decision is ambiguous as to whether the arbitrator intended to impose a new requirement on

11

Bruno's, or whether the arbitrator was merely commenting that Bruno's could further expand its authority in the arena of scheduling employees by bringing that issue to the bargaining table.

After examining Bruno's' arguments, the applicable case law, and the arbitrator's decision, the court finds nothing irrational in the portions of the decision that are contested by Bruno's. The decision drew its essence from the CBA, involved construction of Article 5, and did not exceed the authority of the arbitrator. Consequently, Bruno's' motion for summary judgment is due to be denied. For the same reasons, the Union's motion is due to be granted, except that to the extent that the motion seeks fees and costs it is due to be denied.

## IV.  CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court determines the motion for summary judgment filed by Bruno's (court document #8) is due to be denied. The court further determines that the motion for summary judgment filed by the Union (court document #9) is due to be granted, but to the extent that the motion seeks fees and costs it is due to be denied.

A separate order will be entered in accordance with the findings set forth herein.

DATED this **20th** day of **June**, 2003.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

13